**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAVID V. JORDAN, | : | |
|    *Plaintiff,* | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-1531 |
| | : | |
| UNIT MANAGER FEDDER, *et al.*, | : | |
|    *Defendants.* | : | |

**MEMORANDUM**

**Pappert, J.**                                                                                        **April 8, 2025**

     David Jordan, currently incarcerated at SCI Rockview, filed this lawsuit *pro se* alleging violations of his civil rights. He seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Jordan *in forma pauperis* status and dismiss his Complaint. He will be given leave to file an amended complaint if he can cure the deficiencies discussed below and in the accompanying Order.

I[1]

     Jordan alleges that his constitutional rights were violated while he was housed at SCI Phoenix. He names as defendants Unit Manager Fedder, Sergeant Thomas, Corrections Officer Hopson, Unit Manager Grady, Lieutenant Aguiar, Counselor Sprenkle, Captain Cali, and PSS Jacobs. (Compl. at 1-6.) His claims are based on three separate instances.

---

[1] The Court adopts the sequential pagination assigned by the CM/ECF docketing system. The factual allegations set forth in this Memorandum are taken from Jordan's Complaint. Appended to the Complaint are copies of Final Appeal Decisions for the following grievances: #1010714, #1011035, #1011435, #1011036. (*See* ECF No. 1-1 at 2-5.)

First, Jordan claims that on May 5, 2022,[2] he requested mental health attention and Defendant Sprenkle "issued a false and retaliatory misconduct charge against Jordan and confined him to the Restricted Housing Unit (RHU) for four days, due to Jordan's complaint about his mental health during his request for mental health attention." (*Id.* at 7.) He alleges that when he went to Counselor Sprenkle's office on the Q-B Housing Unit and asked to speak to a psychologist, Sprenkle asked the basis for his request. (*Id.*) Jordan reported having homicidal thoughts. (*Id.* at 8.) He alleges that Sprenkle then falsely charged him with threatening her or her family. (*Id.* at 8, 9.) According to Jordan, "[l]ater that same day, Defendant Cali" approved a false and retaliatory misconduct charge and ordered Jordan confined to the RHU. (*Id.* at 8.) He was confined to the RHU for four days, although his misconduct was dismissed with prejudice by the Hearing Examiner. (*Id.*) He contends that Sprenkle and Cali sought to harass Jordan and acted in retaliation for Jordan's "complaint about his mental health during his request for mental health attention." (*Id.*) He also contends that Sprenkle defamed him by publishing in the misconduct report that he had threatened her or her family. (*Id.* at 9.) He asserts that his statements were aimed at seeking mental health assistance but were presented as a threat to another person to mislead prison security staff, administration, and the Hearing Examiner. (*Id.* at 8-9.)

Second, Jordan claims that between December 8, 2022, when he was released from the RHU, and December 15, 2022, he filed three grievances regarding the failure to return his property after his release from the RHU. (*Id.* at 10.) He avers that he

---

[2] Based on a reading of the Complaint in its entirety and the Final Appeal Decision for Grievance #1011435 attached to the Complaint, it appears that the May 5, 2022 date is an error and that the interaction between Jordan and Counselor Sprenkle occurred on December 5, 2022. (*See* ECF No. 1-1 at 4.)

2

first filed Grievance #1010714 and Grievance #1011036, and filed Grievance #1010156 two days later. (*Id.*) Jordan contends that Defendants Fedder, Thomas, Hopson, Aguiar, and Grady engaged in a campaign of retaliatory harassment "for the filing of recent grievances against them because they had purposely delayed to [sic] return Jordan's stored property and legal material" in violation of prison policy. (*Id.*) Specifically, he claims that he spoke with Fedder while he was being released from the RHU and asked him to promptly return his stored property but Fedder "never arranged" for the return of the property. (*Id.* at 11.) He also alleges that on December 11, 2022, Thomas, Hopson, and Aguiar continued to withhold his stored property and legal paperwork. (*Id.*) He avers that he wrote several request slips and grievance requests regarding the need for his property and received no responses. (*Id.*) On that same date, Jordan contacted Grady who "failed to do his job by refusing to grant Jordan's request to arrange for an escort . . . to get his withheld property . . . [as] harassment for the filing of grievances." (*Id.*) Jordan contends that other similarly situated prisoners housed in general population on R block received their stored property from the main property room upon their release from the RHU. (*Id.*) Jordan received his property seven days after he was released from the RHU. (*Id.* at 10.)

Third, Jordan alleges that Defendant Jacobs retaliated against him on December 12, 2022, because Jordan had filed grievances "against the defendants." (*Id.* at 12.) He contends that he "simply asked Defendant Jacobs to provide him mental health attention" but was denied. (*Id.*) He handed a "request slip" to Jacobs and reported that "he had been feeling manic, angry, upset, frustrated, and depressed, stemming from being prevented from access to his personal property upon release from the RHU and

3

during his stay in general population." (*Id.*)  According to Jordan, Jacobs recognized that he was agitated but intentionally deprived him of mental health treatment to harass him and in retaliation for his request for mental health services.  (*Id.*)

Jordan avers that as a result of the events with Counselor Sprenkle and Captain Cali, his mental health suffered and he is afraid to speak up about his true symptoms concerning his mental health to DOC employees.  (*Id.* at 8, 10.)  He further contends that due to the delayed return of his property and the denial of mental health treatment by Jacobs on December 12, 2022, his mental health has suffered.  (*Id.* at 11, 12.)

Based on the foregoing, Jordan claims that Defendants engaged in a campaign of harassment[3] and retaliation against him.  (*Id.* at 13.)  He also seeks to present a defamation claim against Sprenkle.  (*Id.*)  As relief, Jordan seeks monetary damages.  (*Id.* at 15-16.)

## II

The Court will grant Jordan leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4] Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to

---

[3] To the extent Jordan seeks to present a standalone constitutional claim based on verbal harassment, such claim fails.  *See Washington v. Rozich*, 734 F. App'x 798, 801 (3d Cir. 2018) (*per curiam*) ("Verbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment." (citing *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) and *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000)).

[4] Because Jordan is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

4

dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  Additionally, a court may dismiss a complaint based on an affirmative defense, such as the statute of limitations "when the statute of limitations defense is apparent on the face of the complaint."  *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).

As Jordan is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.*  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala*, 704 F. 3d at 245).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law,

irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

### III

#### A

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To establish individual liability in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, meaning a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims brought against that defendant. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018).

Jordan attempts to allege First Amendment retaliation claims against the named Defendants. To state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*). A prisoner's filing of a grievance or expressing an intent to file a grievance constitutes

constitutionally protected conduct. *Watson v. Rozum*, 834 F.3d 417, 422-23 (3d Cir. 2016); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'" *Watson*, 834 F.3d at 423 (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original). "[B]eing placed in lockdown, being moved to restricted housing, and being issued misconduct charges are more than '*de minimis*' adverse actions." *Palmore v. Hornberger*, 813 F. App'x 68, 70 (3d Cir. 2020) (*per curiam*) (quoting *McKee*, 436 F.3d at 170). "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Ruttle v. Brady*, No. 22-3000, 2023 WL 5554648, at *2 (3d Cir. Aug. 29, 2023) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). As explained below, the allegations in the Compliant fail to meet this standard.

1

Jordan claims that Counselor Sprenkle retaliated against him by filing a false misconduct charge because he requested mental health services. (*See* Compl. at 7-9.) He further claims that Captain Cali approved the allegedly false misconduct charge and confined him to the RHU[5] in retaliation for his request for mental health services. (*Id.* at 8.) Assuming for purposes of statutory screening that Jordan's request for

---

[5] As noted above, the Court understands these interactions to have occurred on December 5, 2022. (*See* ECF No. 1-1 at 4.)

medical care was protected activity,[6] these claims, nonetheless, are not plausible as pled.

With respect to his allegations against Counselor Sprenkle, Jordan represents that he went to Counselor Sprenkle's office and informed her that he wanted to speak to a psychologist. (Compl. at 7.) He claims that when she asked him why, he reported having homicidal thoughts. (*Id.*) Jordan's allegation that he was given the misconduct charge due to his request for treatment, as opposed to his expression of homicidal thoughts, is not supported by any factual allegations. Further, it appears from a reading of the Complaint as a whole, that Counselor Sprenkle issued the misconduct

---

[6] *Compare Mullin v. Balicki*, No. 11-247, 2019 WL 2315044, at *4 n.3 (D.N.J. May 31, 2019) ("[W]hile the filing of official grievances regarding medical care constitutes protected activity, Plaintiff does not cite any cases – and the Court is unaware of any – in which the mere verbal request for medical care by a prisoner constitutes protected activity for the purposes of a First Amendment retaliation claim."); *Humphrey v. Pa. Dep't of Corr.*, No. 23-109J, 2024 WL 5414808, at *3 (W.D. Pa. Dec. 10, 2024) (dismissing retaliation claim where facts alleged failed to support an inference that the plaintiff was engaged in constitutionally protected conduct equivalent to a grievance when he discussed medical records with prison staff and inquired about returning to prison job after completion of physical therapy); *Haywood v. Wexford Health Sources, Inc.*, 752 F. Supp. 3d 934, 947 (N.D. Ill. 2024) (inmate with mental health history who called for a crisis team based on suicidal ideations had not engaged in protected First Amendment activity); *Easley v. Bloom*, No. 22-135, 2023 WL 5206889, at *4 (W.D. Pa. July 17, 2023) (finding that suicide attempt and mental health crisis were not expressive or communicate conduct that falls within the definition of protected activity for purposes of First Amendment retaliation claim because conduct is protected by the First Amendment when the nature of the activity, combined with the factual context and environment in which it was undertaken, shows that the activity was sufficiently imbued with elements of communication to fall within the First Amendment's scope) (citing *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 158 (3d Cir. 2002)), *report and recommendation adopted*, No. 22-135, 2023 WL 5207830 (W.D. Pa. Aug. 14, 2023); *with Williams v. Clark*, No. 18-0315, 2021 WL 6052121, at *9 (W.D. Pa. Dec. 20, 2021) (finding inmate's request for medical care was constitutionally protected conduct upon which he based his retaliation claim), *aff'd*, No. 22-1068, 2022 WL 1402052 (3d Cir. May 4, 2022); *Serrano v. Downs*, No. 22-1418, 2024 WL 1283545, at *4 (S.D. Ind. Mar. 25, 2024) ("A request for medical or mental health care can be protected First Amendment activity."); *Milner v. Lamont*, No. 20-1245, 2022 WL 2110971, at *8 (D. Conn. June 9, 2022) ("District courts in this Circuit are divided on whether an inmate's request for medical attention falls within the First Amendment's protections.") (citing cases).

charge because Jordan's expression of homicidal thoughts included a threat to her and her family, a charge which Jordan contests. (*See* Compl. at 8 ("Defendant Sprenkle had falsely charged Jordan with threatening an employee, or their family."); *see id.* at 9 ("[Defendant Sprenkle] falsely claimed that Jordan had threatened her or her family.").)

Jordan has not plausibly alleged that his request for mental health treatment was a substantial or motivating factor for the misconduct charge. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). "A complaint that pleads facts merely consistent with a defendant's liability stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up).

Nothing in the Complaint plausibly alleges that Jordan's request for mental health treatment was a substantial or motivating factor for the misconduct charge issued by Sprenkle. Jordan does not provide the substance or language of the specific statements he made to Sprenkle and it is not plausible to infer that the misconduct charge was linked to a retaliatory motive when the content of his statements is not even alleged. Similarly, Jordan's assertion that Cali approved a false misconduct

9

charge and ordered Jordan's confinement to the RHU to punish Jordan for his "complaint about his mental health during his request for mental health attention," (*see* Compl. at 8), is wholly conclusory and not supported by any factual allegations.

Accordingly, Jordan's claims against Sprenkle and Cali will be dismissed. *See, e.g., Fritz v. Cnty. of Westmoreland*, No. 22-2999, 2024 WL 808970, at *3 (3d Cir. Feb. 27, 2024) (affirming dismissal of First Amendment retaliation claim where plaintiff's allegations as to causation were conclusory and speculative), *cert. denied sub nom. Fritz v. Westmoreland Cnty., PA*, No. 24-106, 2024 WL 4427230 (U.S. Oct. 7, 2024); *Miller v. Metzger*, No. 21-2223, 2022 WL 4820322, at *2 (3d Cir. Oct. 3, 2022) (*per curiam*) (affirming dismissal of First Amendment retaliation claim where plaintiff failed to provide sufficient factual matter showing that alleged protected activity was a substantial or motivating factor in the decision to discipline him); *McGinnis v. Hammer*, 751 F. App'x 287, 292 n.2 (3d Cir. 2018) (*per curiam*) ("McGinnis' conclusory allegation that his grievance was a substantial motivating factor in Hammer's decision to deny ibuprofen fails to reflect more than a sheer possibility that a defendant has acted unlawfully.") (citing *Oliver v. Roquet*, 858 F.3d 180, 192 (3d Cir. 2017)).

2

Jordan asserts that between December 8, 2022, when he was released from the RHU and returned to the general population, and December 15, 2022, he filed three grievances regarding the return of his property. (Compl. at 10.) He claims that Fedder, Thomas, Hopson, Aguiar and Grady engaged in a campaign of retaliatory harassment for the filing of the grievances and that they purposely delayed the return of his

materials. (*Id.*) Jordan's First Amendment retaliation claims against these Defendants are not plausible.

Under Jordan's alleged facts, he suffered no more than a *de minimis* adverse consequence. The Final Appeal Decision to grievance #1011036 that Jordan attached to his Complaint indicates that he received his property on December 15, 2022. (*See* ECF No. 1-1 at 5.) Indeed, Jordan alleges that his property was withheld for seven days. (*See* Compl. at 10 ("Defendants Fedder, Thomas, Hopson, Aguiar, and Grady had engaged in a campaign of retaliatory harassment for the filing of recent grievances against them because they had purposed delayed to [sic] return Jordan's stored property and legal material. This continued to last for a period of 7 days."); *id.* at 13 ("This campaign [of retaliatory harassment] included . . . withholding property and denial of access [to] legal paperwork, for 7 days. . . . ").) The alleged adverse action, the failure to return Jordan's property to him for seven days after his release from the RHU to general population, was *de minimis* and insufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Compare Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (*per curiam*) ("In the prison context, we have held that the following actions were sufficient to establish adversity: several months in disciplinary confinement; denial of parole, financial penalties, and transfer to an institution whose distance made regular family visits impossible; and placement in administrative segregation that severely limited access to the commissary, library, recreation, and rehabilitative programs."); *Whitenight v. Harry*, No. 16-1350, 2019 WL 1782139, at *12 (M.D. Pa. Jan. 23, 2019) ("Examples of actions that have been held to constitute such adverse action is being charged with a misconduct, being involuntarily medicated, and

11

being denied parole for failing to complete a medical treatment plan) (internal citations omitted), *report and recommendation adopted*, No. 16-1350, 2019 WL 1779507 (M.D. Pa. Apr. 23, 2019); *with Rosa-Diaz v. Rivello*, No. 23-3176, 2024 WL 4658777, at *2 n.4 (3d Cir. Nov. 4, 2024) (describing one to two month seizure of legal paperwork for an open case in discovery proceedings as more than *de minimis* adverse consequence of protected conduct). Indeed, Jordan was not dissuaded from continuing to file grievances regarding the deprivation of his property. (*See* Compl. at 10 ("On December 8, 2022, when Jordan was released from the RHU, and until December 15, 2022, and as of the date Jordan Filed Grievances #1010714 and #1011036, and two days later, after Jordan filed Grievance #1010156 where he complained about wanting his property after his release from the RHU.").); *see also Nelson v. Redick*, No. 24-1087, 2024 WL 3177774, at *2 (3d Cir. June 26, 2024) (*per curiam*) ("Redick's single action of failing to deliver a sick call request slip was not an adverse action. Even if we assume that Redick intentionally refused to relay Nelson's request for medical attention to punish Nelson for suing her, her act was insufficient to deter a person of ordinary resolve from exercising his right to pursue civil litigation against prison officials. Nelson has not identified any other deterrent effect that Redick's act could have had — Redick's inaction evidently did not deter Nelson from promptly renewing his request for medical attention, and it did not prevent Nelson from receiving medical attention a few hours after his renewed request."). Accordingly, Jordan's retaliation claims against

Defendants Fedder, Thomas, Hopson, Aguiar, and Grady will be dismissed with prejudice.[7]

3

Jordan's retaliation claim against Defendant Jacobs also is not plausible as pled. He alleges that he asked Jacobs to provide him mental health attention on December 12, 2022, but she refused in retaliation for grievances he had recently filed "against the defendants." (Compl. at 12.) Jordan sought treatment because he had been feeling manic, angry, upset, frustrated, and depressed since his property was not returned to him upon his release from the RHU on December 8. (*Id.*)

Jordan does not allege facts to support his conclusion that Jacobs denied him medical treatment because he had recently filed grievances "against the defendants." His allegations against Jacobs are wholly conclusory. *See Oliver*, 858 F.3d at 195 ("Absent supporting facts that make it reasonable to draw an inference of retaliation, these conclusory assertions of a cause-and-effect relationship between specific protected activities and a later adverse action are insufficient to plead causation."). Further, "[i]t is only intuitive that for protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct." *Ambrose v. Township of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002). Jordan has not alleged facts from which it can reasonably be inferred that Jacobs even knew that Jordan had filed grievances at the time that he requested mental health treatment on December 12, 2022, or that the grievances were a substantial motivating factor in the alleged denial

---

[7] In light of the Court's conclusion, the Court will not address whether Jordan has adequately pled the third prong of the First Amendment retaliation analysis.

of medical care. *See also Higgs v. New Jersey Dep't of Corr.*, No. 24-1712, 2024 WL 3811985, at *3 (3d Cir. Aug. 14, 2024) (*per curiam*) ("Nothing contained in Higgs' complaint would allow a Court to plausibly infer that Chery was aware of Higgs' grievance against him, much less that the grievance motivated Chery's search."); *Pagliaroli v. Ahsan*, No. 18-9683, 2024 WL 4199800, at *6 (D.N.J. Sept. 16, 2024) ("Although grievances are protected activity and the denial of medical care can be an adverse action, Plaintiff fails to provide any well-pleaded facts to suggest that Dr. Ashan, Nurse Ivery, or Nurse Brewin denied him needed medical care or that his grievances were a substantial motivating factor in that alleged denial of medical care."). Accordingly, Jordan's retaliation claim against Jacobs will be dismissed. *See Miller v. Metzger*, No. 21-2223, 2022 WL 4820322, at *2 (3d Cir. Oct. 3, 2022) (*per curiam*) (affirming dismissal of First Amendment retaliation claim where plaintiff failed to provide sufficient factual matter showing that alleged protected activity was a substantial or motivating factor in the decision to discipline him); *McGinnis v. Hammer*, 751 F. App'x 287, 292 n.2 (3d Cir. 2018) (*per curiam*) ("McGinnis' conclusory allegation that his grievance was a substantial motivating factor in Hammer's decision to deny ibuprofen fails to reflect more than a sheer possibility that a defendant has acted unlawfully.") (citing *Oliver*, 858 F.3d at 192).

B

Jordan also attempts to allege a defamation claim against Counselor Sprenkle under Pennsylvania law. (*See* Compl. at 8-10, 13-14.) This claim is time-barred.

Jordan claims that Sprenkle defamed him when she included his statement regarding homicidal thoughts in the misconduct report. (Compl. at 8-9.) Liberally

14

construing the Complaint in a light most favorable to Jordan, this event is alleged to have occurred on December 5, 2022. Under Pennsylvania law, "[t]he statute of limitations for defamation claims is one year from the date of publication." *In re Phila. Newspapers*, 690 F.3d 161, 174 (3d Cir. 2012) (citing 42 Pa. Cons. Stat. § 5523). Thus, Jordan was required to bring this claim by December 5, 2023.

Jordan's Complaint was entered on the docket on March 21, 2025. However, it was filed on March 12, 2025, at the earliest, because that is the date he signed his initial pleading. *See* ECF No. 1; *see also Houston v. Lack*, 487 U.S. 266, 276 (1988); *Moody v. Conroy*, 680 F. App'x 140, 144 (3d Cir. 2017) (*per curiam*) ("Under the prison mailbox rule, . . . a pleading is deemed filed at the time a prisoner executes it and delivers it to prison authorities for mailing."). Since this case was filed more than fifteen months after the statute of limitations expired on his defamation claim, it is time-barred.[8]

"Although the running of the statute of limitations is ordinarily an affirmative defense, where that defense is obvious from the face of the complaint and no development of the record is necessary, a court may dismiss a time-barred complaint *sua sponte* under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim." *Ostuni v. Wa Wa's Mart*, 532 F. App'x 110, 111-12 (3d Cir. 2013) (*per curiam*); *see also Harris v. Stash*, No. 22-1910, 2023 WL 1990531, at *2 (3d Cir. Feb. 14, 2023) (*per curiam*) ("[A]

---

[8] "Tolling is [an] extraordinary remedy, and is proper only when the principles of equity would make [the] rigid application [of a limitation period] unfair." *D.J.S.-W ex rel. Stewart v. United States*, 962 F.3d 745, 750 (3d Cir. 2020) (alterations in original) (internal citations and quotations omitted). Equitable tolling is generally appropriate where: (1) a defendant actively misleads a plaintiff regarding a cause of action; (2) a plaintiff in some extraordinary way has been prevented from asserting a claim; or (3) a plaintiff has timely asserted his claims but in the wrong forum. *See id.*

15

court may dismiss claims *sua sponte* if a time-bar is obvious from the face of the complaint and no further development of the record is necessary."), *cert. denied*, 144 S. Ct. 579 (2024). Because it is apparent from the face of the Complaint that the defamation claim is time-barred, it will be dismissed with prejudice.

IV

For the foregoing reasons, the Court will grant Jordan leave to proceed *in forma pauperis* and dismiss the Complaint. The constitutional claims based on harassment, the defamation claim, and the First Amendment retaliation claims against Defendants Fedder, Thomas, Hopson, Aguiar and Grady will be dismissed with prejudice pursuant to § 1915(e)(2)(B)(ii) for failure to state a claim. The First Amendment retaliation claims against Defendants Sprenkle, Cali, and Jacobs will be dismissed without prejudice pursuant to § 1915(e)(2)(B)(ii) for failure to state a claim.

An appropriate Order regarding amendment follows.

**BY THE COURT:**

*/s/ Gerald J. Pappert*
**Gerald J. Pappert, J.**
