# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID V. JORDAN,                     :
    *Plaintiff,*                     :
                                     :
v.                                   :    CIVIL ACTION NO. 25-CV-1531
                                     :
COUNSELOR SPRENKLE, *et al.*,        :
    *Defendants.*                    :

## MEMORANDUM

**Pappert, J.**                                          **July 14, 2025**

    *Pro se* Plaintiff David V. Jordan, an inmate currently incarcerated at SCI Rockview, alleges in an amended complaint that his civil rights were violated when he sought mental health treatment. For the following reasons, the Court will dismiss the Amended Complaint.

I[1]

    Jordan alleges that his constitutional rights were violated while he was housed at SCI Phoenix. He initiated this lawsuit in March 2025, naming as defendants: Unit Manager Fedder, Sergeant Thomas, Corrections Officer Hopson, Unit Manager Grady, Lieutenant Aguiar, Counselor Sprenkle, Captain Cali, and PSS Jacobs. (Compl. at 1-6.) In the initial Complaint, Jordan's claims were based on three separate instances.

    First, Jordan alleged that when he requested mental health attention, Sprenkle "issued a false and retaliatory misconduct charge against Jordan and confined him to the Restricted Housing Unit (RHU) for four days, due to Jordan's complaint about his

---

[1] The Court adopts the sequential pagination assigned by the CM/ECF docketing system. The factual allegations set forth in this Memorandum are taken from Jordan's Amended Complaint. Appended to the Complaint is a copy of grievance #1011435 dated December 15, 2022. (*See* ECF No. 21 at 15-16.)

mental health during his request for mental health attention." (*Id*. at 7.) He alleged that when he went to Sprenkle's office on the Q-B Housing Unit and asked to speak to a psychologist, Sprenkle asked the basis for his request. (*Id*.) Jordan reported having homicidal thoughts. (*Id*. at 8.) He alleged that Sprenkle then falsely charged him with threatening her or her family. (*Id*. at 8, 9.) According to Jordan, "[l]ater that same day, Defendant Cali" approved a false and retaliatory misconduct charge and ordered Jordan confined to the RHU. (*Id*. at 8.) He was confined to the RHU for four days, although his misconduct was dismissed with prejudice by the hearing examiner. (*Id*.) He claimed that Sprenkle and Cali sought to harass Jordan and retaliated against him for complaining "mental health during his request for mental health attention." (*Id*.) He also contended that Sprenkle defamed him by publishing in the misconduct report that he had threatened her or her family. (*Id*. at 9.) He asserted that his statements were aimed at seeking mental health assistance but were presented as a threat to another person to mislead prison security staff, administration, and the hearing examiner. (*Id*. at 8-9.)

Second, Jordan alleged that between December 8, 2022, when he was released from the RHU, and December 15, 2022, he filed three grievances regarding the failure of certain prison staff members to return his property. (*Id*. at 10.) Jordan contended that Fedder, Thomas, Hopson, Aguiar, and Grady engaged in a campaign of retaliatory harassment "for the filing of recent grievances against them because they had purposely delayed to [sic] return Jordan's stored property and legal material" in violation of prison policy. (*Id*. at 10-11.) Jordan received his property seven days after he was released from the RHU. (*Id*. at 10.)

Third, Jordan alleged that Jacobs retaliated against him on December 12, 2022, because Jordan had filed grievances "against the defendants." (*Id.* at 12.) He claimed that he "simply asked Defendant Jacobs to provide him mental health attention" but was denied. (*Id.*) He handed a "request slip" to Jacobs and reported that "he had been feeling manic, angry, upset, frustrated, and depressed, stemming from being prevented from access to his personal property upon release from the RHU and during his stay in general population." (*Id.*) According to Jordan, Jacobs recognized that he was agitated but intentionally deprived him of mental health treatment to harass him and in retaliation for his request for mental health services. (*Id.*)

Based on those allegations, Jordan claimed the defendants engaged in a campaign of harassment and retaliated against him in violation of his First Amendment rights, (*Id.* at 13) along with the defamation claim against Sprenkle. (*Id.*)

In an April 8, 2025 Memorandum and Order, the Court screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismissed Jordan's claims. (ECF Nos. 7 and 8; *Jordan v. Fedder*, No. 25-1531, 2025 WL 1047717 (E.D. Pa. Apr. 8, 2025).) Jordan's contentions that Fedder, Thomas, Hopson, Aguiar and Grady engaged in a campaign of retaliatory harassment and purposely delayed the return of his materials after his release from the RHU in violation of his First Amendment rights were dismissed with prejudice pursuant to § 1915(e)(2)(B)(ii). *Jordan*, 2025 WL 1047717, at *4-5. Under the facts alleged, Jordan suffered no more than a *de minimis* adverse consequence. *Id.* at *5. Jordan's First Amendment retaliation claims against Sprenkle and Cali were dismissed without prejudice as wholly conclusory. *Id.* at *4. Jordan had not plausibly alleged that his request for mental health treatment was a substantial or motivating

factor for the issuance of the misconduct charge by Sprenkle or the approval of the misconduct charge by Cali. *See id.* Jordan's First Amendment retaliation claim against Jacobs was also dismissed without prejudice as wholly conclusory. *Id.* at 5. Jordan was instructed to provide additional facts in support of the claims that were dismissed as conclusory. *Id.* Additionally, Jordan's defamation claim against Sprenkle was dismissed with prejudice as time-barred. *Id.* at 6. Jordan was given thirty-days to file an amended complaint only as to the claims that were dismissed without prejudice, that is, the First Amendment retaliation claims against Sprenkle, Cali, and Jacobs. (*See* ECF No. 8.)

On June 23, 2025, Jordan filed his Amended Complaint. (ECF No. 21 ("Am. Compl.").)[2] Jordan again asserts First Amendment retaliation claims against Sprenkle, Cali, and Jacobs, and also alleges against Jacobs an Eighth Amendment deliberate indifference to medical needs claim. (*See* Am. Compl. at 11.) Jordan identifies Sprenkle as the Counselor on the Q-B housing unit, Cali as a Captain who was assigned to the 6 a.m. to 2 p.m. shift, and Jacobs as the Psychologist Service Assistant on the Q and R housing units. (*Id.* at 1-2.)

Jordan claims Sprenkle retaliated against him on December 5, 2022, "by filing a false and retaliatory misconduct against him, where she falsely accused Jordan of threatening an employee or their family with bodily harm, moved him to the RHU where he spent three days there, subjected Jordan to significant risk of sanction to 90

---

[2] Prior to filing the Amended Complaint, Jordan filed several motions for reconsideration which were denied. (*See* ECF Nos. 13, 14, 15, 16, 18, 19, 20.)

days of disciplinary segregation,[3] intimidation, and fear, because Jordan had

requested mental health treatment from Sprenkle and made an oral grievance against

her." (*Id.* at 2-3.)  He avers that he "initiated his request" for mental health treatment

from Defendant Sprenkle at 10:55 a.m. when he went to her office on the Q-B housing

unit. (*Id.* at 3-4.)  Jordan asked to speak to a psychologist and Sprenkle asked him the

basis for his request. (*Id.* at 4.)  Jordan requested mental health services and

"expressed he was having homicidal thoughts." (*Id.*)  Sprenkle ordered Jordan to

return to his cell. (*Id.*)  Jordan contends that "[a]t that point" he complained that he

was denied medical assistance, although it is unclear to whom he said this.[4] (*Id.* at 4-

5.)  Jordan walked away in compliance with Sprenkle's order to return to his cell. (*Id.*

at 5.)  Thirty minutes later, at 11:25 a.m., Jordan was instructed to leave his cell

because Cali said he was to be moved to the RHU. (*Id.*)  Jordan avers that as he was

escorted to the RHU, he asked why he was being sent to the hole when he had asked to

---

[3] Jordan states that, according to prison policy, threatening an employee or their family with bodily harm is a Class 1 Misconduct which carries a maximum of 90 days of disciplinary custody in the RHU. (Am. Compl. at 6.)

[4] Jordan attached to the Amended Complaint a copy of grievance #1011435, which is dated December 15, 2022. (*See* Am. Compl. at 15-16.)  He contends that it "reflects that Jordan reported his oral grievance on December 5, 2022, where he complained of being denied assistance during his stay on Q-B housing unit." (*Id.* at 3.)  The relevant portion of the grievance states:

> On December 5, 2022, at approx. 10:55 am, when I attempted to reach out for help through Counselor Sprinkle [sic] to get me mental health attention, and soon after I complained about not getting anything done on the housing unit, and immediately after I spoke up to her about a mental health issue I was having at that time.  Ms. Sprinkle issued me a retaliatory misbehavior report and charged me with threatening another person.

(*Id.* at 15.)

speak to a psychologist, he indicated that he had done nothing wrong, and he screamed that it was a mental health issue.  (*Id.*)

At 1:55 p.m. that day, Jordan was served with Misconduct No. D308556 while he was in the RHU.  (*Id.*)  The misconduct report was written by Sprenkle at 10:55 that morning.  (*Id.*)  According to Jordan, the report acknowledges that Jordan requested to speak to a psychologist and that he reported feeling homicidal.  (*Id.* at 6.)  He contends that "[a]s a result, Defendant Sprenkle was knowingly untruthful when she accused Jordan of threatening an employee or their family with bodily harm."  (*Id.*)  Jordan denies he threatened Sprenkle or any other employee with bodily harm.  (*Id.*)  Further, he claims that "Defendant Sprenkle took Jordan's words out of context when he expressed having homicidal thoughts" and "Defendant Sprenkle received sufficient information that Jordan took the necessary step to have his homicidal thoughts treated by a mental health professional."  (*Id.*)  The misconduct charge was dismissed with prejudice after a hearing on December 8, 2022.  (*Id.* at 6-7.)

Jordan alleges that Cali retaliated against him by approving the filing of "a false and retaliatory misconduct charge against Jordan, " *i.e.*, Misconduct No. D308556, and ordered Jordan moved to the RHU.  (*Id.* at 3.)  Jordan claims this was done because he requested mental health treatment from Sprenkle.  (*Id.*)  Jordan avers that Sprenkle and Cali's conduct caused him to experience increased stress, confusion, and intimidation, and that he is afraid to request mental health treatment.  (*Id.* at 7.)

Jordan states that Jacobs, as a psychologist service assistant, was responsible for reviewing and responding to inmates' mental health needs.  (*Id.*)  According to Jordan, on December 12, 2022, Jacobs "purposely refused to process or grant Jordan's

request to provide him with mental health attention in retaliation because he requested mental health treatment from Jacobs and because he filed his grievance against her." (*Id.* at 7-8.)  Jordan alleges that he approached Jacobs at her office on the R-A housing unit and requested urgent psychological treatment.  (*Id.*)  He contends that he sought treatment because he had been feeling manic, angry, upset, frustrated, and depressed. (*Id.*)  He further contends that his oral request "was ignored or never processed."  (*Id.*) Instead, Jacobs instructed Jordan to submit a request slip, which he completed and immediately handed to her.  (*Id.*)  In the request, Jordan stated that he had been feeling manic, angry, upset, frustrated, and depressed since his property was not returned to him upon his release from the RHU on December 8, 2022.  (*Id.*)  Jordan asserts that Jacobs worked the 8 a.m. to 4 p.m. shift on December 12 and that he spoke with her and submitted his request slip at 9:15 a.m.  (*Id.* at 8-9.)  He claims that Jacobs failed to process the request, thereby refusing to provide him with the mental health services that he sought.  (*Id.* at 9.)  Jordan also claims that he filed grievance #1011035 against Jacobs on December 12 and that she was aware he filed it.  (*Id.*)  In the grievance, Jordan claimed that Jacobs refused to talk to Jordan, ignored him when he handed her the request slip, and ignored the written grievance.  (*Id.*)  He contends that Jacobs's refusal to provide Jordan with mental health counseling was vindictive and retaliatory "to stop Jordan from reporting his mental health symptoms."  (*Id.* at 10.) Jordan also asserts that the initial review response to the grievance reflects that Jacobs "never recorded her interaction with Jordan regarding his requests for mental health attention on December 12, 2022, in his mental health records."  (*Id.*)  He contends that

7

Jacobs caused him to experience personal anguish, depression, psychological pain, embarrassment, harassment and frustration.  (*Id.* at 11.)

II

Because Jordan has been granted *in forma pauperis* status, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Amended Complaint if, among other things, it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Jordan is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.*  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala*,

704 F. 3d at 245).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants."  *Id.*

## III

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Construing the Amended Complaint liberally as this Court must, Jordan has failed to allege a constitutional violation.

## A

Jordan again attempts to assert First Amendment retaliation claims against Sprenkle and Cali in connection with the misconduct that was filed against him.  To state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*).  A prisoner's filing of a grievance or expressing an intent to file a grievance constitutes constitutionally protected conduct.  *Watson v. Rozum*, 834 F.3d 417, 422-23 (3d Cir. 2016); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).  "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of

antagonism coupled with timing to establish a causal link." *Ruttle v. Brady*, No. 22-3000, 2023 WL 5554648, at *2 (3d Cir. Aug. 29, 2023) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). Even constructing the Amended Complaint liberally, Jordan once again fails to meet this standard as he has failed to plausibly plead that the alleged protected conduct was a substantial or motivating factor for any adverse action.

Jordan claims that Sprenkle retaliated against him by filing a false misconduct charge because he requested mental health treatment and "made an oral grievance against her." (*See* Am. Compl. at 2-7.) He further claims that Cali approved the allegedly false misconduct charge and confined him to the RHU in retaliation for his request for mental health services. (*Id.* at 5.) Assuming for purposes of statutory screening that Jordan's request for medical care was protected activity,[5] these claims, nonetheless, are not plausible as pled.

---

[5] *Compare Mullin v. Balicki*, No. 11-247, 2019 WL 2315044, at *4 n.3 (D.N.J. May 31, 2019) ("[W]hile the filing of official grievances regarding medical care constitutes protected activity, Plaintiff does not cite any cases – and the Court is unaware of any – in which the mere verbal request for medical care by a prisoner constitutes protected activity for the purposes of a First Amendment retaliation claim."); *Humphrey v. Pa. Dep't of Corr.*, No. 23-109J, 2024 WL 5414808, at *3 (W.D. Pa. Dec. 10, 2024) (dismissing retaliation claim where facts alleged failed to support an inference that the plaintiff was engaged in constitutionally protected conduct equivalent to a grievance when he discussed medical records with prison staff and inquired about returning to prison job after completion of physical therapy); *Haywood v. Wexford Health Sources, Inc.*, 752 F. Supp. 3d 934, 947 (N.D. Ill. 2024) (inmate with mental health history who called for a crisis team based on suicidal ideations had not engaged in protected First Amendment activity); *Easley v. Bloom*, No. 22-135, 2023 WL 5206889, at *4 (W.D. Pa. July 17, 2023) (finding that suicide attempt and mental health crisis were not expressive or communicate conduct that falls within the definition of protected activity for purposes of First Amendment retaliation claim because conduct is protected by the First Amendment when the nature of the activity, combined with the factual context and environment in which it was undertaken, shows that the activity was sufficiently imbued with elements of communication to fall within the First Amendment's scope) (citing *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 158 (3d Cir. 2002)), *report and recommendation adopted*, No. 22-135, 2023 WL 5207830

Jordan claims that he went to Sprenkle's office and told her he wanted to speak to a psychologist. (*Id.* at 3.) He claims that when she asked him why, he reported having homicidal thoughts. (*Id.* at 4.) Jordan's allegation that he was given the misconduct charge due to his request for treatment or complaint "about not getting anything done on the housing unit" (*see id.* at 15), as opposed to his expression of homicidal thoughts, is conclusory and not supported by any factual allegations. Further, it appears from a reading of the Amended Complaint as a whole, Sprenkle issued the misconduct because she understood Jordan's expression of homicidal thoughts to include a threat to her and her family. (*See id.* at 6.) Jordan denies that he threatened Sprenkle or any other employee with bodily harm and instead asserts that "Defendant Sprenkle took Jordan's words out of context when he expressed having homicidal thoughts." (*Id.*)

As the Court explained in the April 8 Memorandum, to pass statutory screening, a plaintiff must support his claims with plausible factual allegations and conclusory allegations will not suffice. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a

---

(W.D. Pa. Aug. 14, 2023); *with Williams v. Clark*, No. 18-0315, 2021 WL 6052121, at *9 (W.D. Pa. Dec. 20, 2021) (finding inmate's request for medical care was constitutionally protected conduct upon which he based his retaliation claim), *aff'd*, No. 22-1068, 2022 WL 1402052 (3d Cir. May 4, 2022); *Serrano v. Downs*, No. 22-1418, 2024 WL 1283545, at *4 (S.D. Ind. Mar. 25, 2024) ("A request for medical or mental health care can be protected First Amendment activity."); *Milner v. Lamont*, No. 20-1245, 2022 WL 2110971, at *8 (D. Conn. June 9, 2022) ("District courts in this Circuit are divided on whether an inmate's request for medical attention falls within the First Amendment's protections.") (citing cases).

cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). "A complaint that pleads facts merely consistent with a defendant's liability stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up); *see also Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (the Court is not required "to accept as true unsupported conclusions and unwarranted inferences."); *Wallace v. Pennsylvania Dep't of Corr.*, No. 24-152, 2025 WL 1568665, at *7 (W.D. Pa. June 3, 2025) ("Where every defendants' action can obviously be explained without supposition of a retaliatory motive, some concrete basis for retaliation must be alleged to state a plausible claim.  * * *  Wallace makes a classic circular argument: there must have been a retaliatory motive behind any actions by the defendants because a retaliatory motive would explain any actions by the defendants. Using the word 'retaliation' or some form thereof does not allege retaliation.").

Jordan asserts that Sprenkle took his expression of homicidal thoughts out of context and that he did not threaten her, or her family.  However, he does not allege any facts from which the Court can reasonably infer that, instead, either his request for mental health treatment or his "oral grievance" was the basis for the issuance of the misconduct.  For instance, Jordan does not describe the specific statements he made to Sprenkle and it is not plausible to infer that the misconduct charge was linked to a retaliatory motive when the content of his statements is not even alleged.  "Absent

supporting facts that make it reasonable to draw an inference of retaliation, . . . conclusory assertions of a cause-and-effect relationship between specific protected activities and a later adverse action are insufficient to plead causation." *Oliver v. Roquet*, 858 F.3d 180, 195 (3d Cir. 2017) (citations omitted). Similarly, Jordan's assertion that Cali approved a false misconduct charge and ordered Jordan's confinement to the RHU to punish Jordan for requesting mental health treatment (*see* Am. Compl. at 3), is wholly conclusory and not supported by any factual allegations. Nothing in the Amended Complaint suggests that the request for mental health treatment was the basis for the approval of the misconduct charge.

Accordingly, Jordan's claims against Sprenkle and Cali will be dismissed. *See Twombly*, 550 U.S. at 570 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."); *see also Fritz v. Cnty. of Westmoreland*, No. 22-2999, 2024 WL 808970, at *3 (3d Cir. Feb. 27, 2024) (affirming dismissal of First Amendment retaliation claim where plaintiff's allegations as to causation were conclusory and speculative), *cert. denied sub nom. Fritz v. Westmoreland Cnty., PA*, No. 24-106, 2024 WL 4427230 (U.S. Oct. 7, 2024); *Miller v. Metzger*, No. 21-2223, 2022 WL 4820322, at *2 (3d Cir. Oct. 3, 2022) (*per curiam*) (affirming dismissal of First Amendment retaliation claim where plaintiff failed to provide sufficient factual matter showing that alleged protected activity was a substantial or motivating factor in the decision to discipline him); *McGinnis v. Hammer*, 751 F. App'x 287, 292 n.2 (3d Cir. 2018) (*per curiam*) ("McGinnis' conclusory allegation that his grievance was a substantial motivating factor in Hammer's decision

to deny ibuprofen fails to reflect more than a sheer possibility that a defendant has acted unlawfully.") (citing *Oliver*, 858 F.3d at 192).

B

1

Jordan's retaliation claim against Jacobs also is not plausible.  He alleges that he asked Jacobs to provide him mental health treatment at 9:15 a.m. on December 12, 2022, first verbally, then by submitting a request slip when instructed by Jacobs to do so.  (Am. Compl. at 7-8.)  Jordan sought treatment because he had been feeling manic, angry, upset, frustrated, and depressed since his property was not returned to him upon his release from the RHU on December 8.  (*Id.* at 8.)  He claims, in circular fashion, that Jacobs refused to provide mental health care by purposely failing to process his requests, because he requested mental health treatment.  (*Id.* at 9.)  He further contends that Jacobs did not process his requests because he filed a grievance against her.  (*Id.* at 9.)  He alleges that Jacobs worked the 8:00 a.m. to 4:00 p.m. shift on December 12, such that Jacobs had six hours and forty-five minutes from the time he first approached Jacobs about receiving treatment to process his requests, yet she failed to do so.  (*Id.*)  According to Jordan, Jacobs was also informed that he filed a grievance against her, although it is unclear when or how she learned this.  (*See id.* at 10 ("Soon after Defendant Jacobs learned that Jordan had filed Grievance #1011035 regarding Jacobs' retaliatory denials of mental health attention, and following on that same day, at which began on December 12, 2022, after he filed a grievance against her. Defendant Jacobs had chose to maintain her pattern of refusals to process Jordan's

14

oral, written, and grievance requests he submitted to provide him with mental health attention because he filed a grievance against her.").)

Jordan's allegations that Jacobs refused to process his request for mental health treatment because he requested mental health treatment also are conclusory and not supported by any plausible factual allegations. He has not pleaded sufficient facts in support of his conclusion that Jacobs refused to process his request for treatment during her shift on December 12 because he filed a grievance against her, even if he filed the grievance on December 12. Jordan does not allege any facts from which the Court can reasonably infer that the filing of the grievance was the basis for the delay in obtaining treatment for Jordan, or that Jacobs even acted to delay. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Once again, Jordan's allegations against Jacobs are conclusory. *See Oliver*, 858 F.3d at 195 ("Absent supporting facts that make it reasonable to draw an inference of retaliation, these conclusory assertions of a cause-and-effect relationship between specific protected activities and a later adverse action are insufficient to plead causation.").

2

To state an Eighth Amendment claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr.*

*Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The failure to provide adequate mental health services can be the basis for a deliberate indifference claim.  *See Palakovic v. Wetzel*, 854 F.3d 209, 227-29, 231-32 (3d Cir. 2017).

Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation.  *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). However, inadequate care may give rise to a deliberate indifference claim when a defendant "act[s] with the requisite state of mind when providing that inadequate care." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017).  Nonetheless, "short delays in treatment unaccompanied by arbitrary or unduly burdensome bureaucratic procedures, and the refusal to summon the medical specialist of the inmate's choice, perform tests or procedures that the inmate desires, or to explain to the inmate the reason for medical action or inaction does not amount to cruel and unusual punishment." *Roman v. Little*, No. 19-5204, 2020 WL 2098096, at *4 (E.D. Pa. Apr. 30, 2020) (internal citations and quotation omitted).

16

Jordan conclusorily alleges that Jacobs acted with deliberate indifference.  His claim is based on his belief that Jacobs should have acted with greater speed and processed his request for treatment on December 12 before her shift ended at 4:00 p.m. (*See* Am. Compl. at 8-11.)  However, he alleges no facts to support a plausible inference that Jacobs knew that Jordan needed immediate mental health treatment but intentionally disregarded his request, delayed necessary treatment based on a non-medical reason, or prevented Jordan from receiving treatment.  "Deliberate indifference requires obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse*, 182 F.3d at 197 (cleaned up).  Jacobs's actions, or inactions, as pled by Jordan do not meet this standard.  Jordan does not allege sufficient facts to push his claim from possible to plausible. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)); *Twombly*, 550 U.S. at 570 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."); *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue.").

IV

For the foregoing reasons, the Court will dismiss the Amended Complaint with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  As Jordan already has been given an opportunity to cure the defects in his claims and has been unable to do so, further amendment would be futile. *See Jones v. Unknown D.O.C.*

17

*Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story"). A final dismissal order follows, which shall be docketed separately in accordance with Federal Rule of Civil Procedure 58(a).

**BY THE COURT:**

*/s/ Gerald J. Pappert*
**Gerald J. Pappert, J.**
